J-A07014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWIN  BAEZ | : | |
| | : | |
| Appellant | : | No. 681 MDA 2017 |

Appeal from the Order Entered November 29, 2016
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s):  CP-38-CR-0000900-2014

BEFORE:   PANELLA, J., OLSON, J., and STEVENS[*], P.J.E.

MEMORANDUM BY PANELLA, J.:              **FILED NOVEMBER 02, 2018**

Edwin Baez appeals from the judgment of sentence entered in the Lebanon County Court of Common Pleas following a jury trial. Baez contends the trial court erred in denying his pre-trial motions to dismiss and to suppress, as well as in denying his request for a new trial due to prosecutorial misconduct. We affirm in part, vacate in part, and remand with instructions.

The relevant facts and procedural history of the appeal are as follows. On May 12, 2014, sixteen-year-old D.R.[1] informed a teacher that Baez, her stepfather, had been sexually abusing her for the past three years. People at D.R.'s school immediately contacted both the police department and Lebanon

---

[*] Former Justice specially assigned to the Superior Court.

[1] As the victim was a minor during the episodes of abuse and a majority of the prosecution, we refer to her by her initials throughout this memorandum. **See** 42 Pa.C.S.A. § 5988(a) **Release of name prohibited**.

County's Children and Youth Services ("CYS"). Detective David Lauver, a child abuse detective with the North Lebanon Township Police Department was assigned to the police investigation, while Stephanie Swisher, an investigator with CYS, was assigned to the CYS investigation. Both Detective Lauver and Swisher spoke with D.R. at her school on the day she made these allegations.

Later that day, Detective Lauver contacted Baez for a non-custodial interview at the police station. Baez agreed to speak with Detective Lauver, but denied any allegation of sexual contact with D.R. Two days later, Baez appeared for a second non-custodial interview with Detective Lauver. At this interview, Baez admitted to sexual contact with D.R. However, he alleged all contact was initiated by D.R. As both of these interviews were non-custodial, Detective Lauver did not provide Baez with ***Miranda***[2] warnings.

On May 15, 2014, Baez was arrested[3] and charged with sexual assault and related crimes. Six days later, while Baez was in prison, Swisher met with Baez in relation to the CYS investigation. Swisher provided Baez with ***Miranda*** warnings, which Baez waived. Baez, once again, admitted to sexual contact between himself and D.R., but asserted D.R. was the aggressor and initiated all contact. This conversation, which occurred over the prison's visitor telephone system, was recorded.

---

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[3] Baez's arrest on May 15, 2014 stemmed from a parole detainer. The Commonwealth did not formally file charges in this case until June 16, 2014.

Prior to trial, Baez filed a series of motions with the court. Relevant to this appeal, Baez filed a motion to suppress the statements made to Swisher due to her alleged misrepresentations during their interview. Additionally, Baez filed a Rule 600 motion to dismiss his charges due to the Commonwealth's lack of diligence in bringing his case to trial. The parties agreed that a hearing on the suppression motion was unnecessary, as the suppression court could decide the motion solely on the transcript of the prison interview between Swisher and Baez. The court, however, conducted a hearing on the Rule 600 motion. Ultimately, the court denied both motions.

The case proceeded to jury trial on June 7, 2016. After two days of testimony, the jury convicted Baez of one count of involuntary deviate sexual intercourse, one count of sexual assault, one count of endangering the welfare of children, one count of corruption of minors, and two counts of indecent assault. The trial court sentenced Baez to an aggregate period of 21 to 44 years' incarceration. Additionally, the court found Baez to be a sexually violent predator ("SVP") and ordered him to register as such for the remainder of his life. This appeal follows the denial of Baez's post-sentence motion.

Baez's first issue challenges the trial court's denial of his motion to dismiss pursuant to Rule 600. Because Baez failed to request the transcript of his Rule 600 motion hearing, this issue is waived.

"The fundamental tool for appellate review is the official record of the events that occurred in the trial court." *Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (en banc) (citation omitted). The certified record

consists of "original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court[.]" Pa.R.A.P. 1921. Items that are not part of the certified record cannot be considered on appeal. **See Preston**, 904 A.2d at 6. In Pennsylvania, we place the responsibility of ensuring the record on appeal is complete "squarely upon the appellant and not upon the appellate courts." **Id**., at 7 (citing Pa.R.A.P. 1931).

With specific regard to transcripts, our Rules of Appellate Procedure require an appellant order and pay for any transcript necessary to permit resolution of the issues appellant raises on appeal. **See** Pa.R.A.P. 1911(a). When an appellant fails to adhere to the precepts of Rule 1911 and order all necessary transcripts, "any claims that cannot be resolved in the absence of the necessary transcripts or transcripts must be deemed waived for the purpose of appellate review." **Preston**, 904 A.2d at 7(citation omitted).

Here, Baez, who is proceeding with privately retained counsel, attached a "Request for Transcript" form to his notice of appeal. However, instead of requesting transcripts, Baez noted in his request that all transcripts had been lodged of record. Our review of the record, however, reveals that the hearing related to Baez's Rule 600 motion, the February 1, 2016 hearing, was never transcribed.

We are unable to conduct a meaningful review of this claim without this transcript.[4] Because Baez failed to request this transcript, we do not find the absence of the transcript attributable to the breakdown in the judicial process. **See id**., at 8 ("An appellant should not be denied appellate review if the failure to transmit the entire record was caused by an 'extraordinary breakdown in the judicial process.'") Therefore, we find Baez's Rule 600 claim waived.

Next, Baez challenges the trial court's denial of his pre-trial suppression motion. Specifically, Baez asserts Swisher misrepresented her role in his criminal investigation, as well as her duty to turn over Baez's comments to the police. Baez alleges this misrepresentation led to his unknowing and unintelligent waiver of his **Miranda** rights. Therefore, Baez contends his statement to Swisher should have been suppressed. We disagree.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

---

[4] In their briefs, both Baez and the Commonwealth describe the motion hearing as "brief," Appellant's Brief, at 21, and "not an evidentiary hearing," Commonwealth's Brief, at 8 n.2. These characterizations of the hearing indicate we might not need the transcript to resolve this issue on appeal. However, without reviewing the transcript, which contains the *only* record proof of the trial court's ruling on this motion, we cannot conclusively determine that the transcript is unnecessary for resolution of our appeal.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (internal citations omitted).

The validity of a waiver of *Miranda* rights is a question of law. *See Commonwealth v. Knox*, 50 A.3d 732, 746 (Pa. Super. 2012). "It is the Commonwealth's burden to establish whether [a defendant] knowingly and voluntarily waived his *Miranda* rights." *Eichinger*, 915 A.2d at 1135-1136 (citation omitted). In considering whether a defendant has validly waived his *Miranda* rights, the trial court engages in a two-prong analysis:

> whether the waiver was voluntary, in the sense that [the] defendant's choice was not the end result of governmental pressure; and whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice.

*Commonwealth v. Pruitt*, 951 A.2d 307, 318 (Pa. 2008) (citation and numbers omitted).

Baez hinges his argument on his belief that Swisher materially misrepresented her duty to turn her findings over to the police by making the following statements: "I am here because of concerns of possible child abuse. I am not here because of the police charges"; "[s]o this is, this is my, this is [the *Miranda* warnings] for what I do specifically"; "[t]his is not for the police. You are only getting it now because I am only seeing you now." N.T., CYS Interview, 5/21/14, at 2 (unpaginated). Baez contends that these misrepresentations led to an unknowing and unintelligent waiver. However,

the suppression court found, and we agree, that Swisher did not misrepresent herself to Baez.

Swisher's representation of her role becomes clearer when placed into the context of the conversation.

[Swisher]: Mr. Baez?

[] Baez: Yes

[Swisher]: Ok. Hi. I'm Stephanie Swisher with Lebanon County Children and Youth. Did you receive a letter in the mail?

[] Baez: No.

[Swisher]: Ok. I am here because I received a report concerning [D.R.] and some inappropriate contact that occurred between you and [D.] Before we go any further, I do need to go over the sheet of paper that's in front of you. It's the *Miranda* rights paper, ok. Just because you have the, as we go through these, if you at any time you do not want to speak with me, do not want to answer my questions, or anything to that nature, you have the right to say I don't want to talk to you and that's fine. And I just have to document that you don't want to talk to me and I go and you go back to where you were, ok?

[] Baez: Ok.

[Swisher]: So the first line there, if I can ask your help, did they give you a pen? Awesome cool. Alright. So the first line, if you can, I usually fill this out but I totally forgot, but my name is, I go by Steph, if you write that in for me, it's S-T-E-P-H. My last name is Swisher, S-W-I-S-H-E-R, and I work for Lebanon County Children and Youth Services like it says there, and I'm here to talk to you just like I said about [D.R.]. If you'll [be] able to just write her name on that second line. Thank you so much. Ok. The next question it says that you have a constitutional right to remain silent. And you need not talk to be if you do not wish to do so.

- 7 -

You don't have to answer any of my questions. Do you understand that?

[] Baez: Yes.

[Swisher]: Ok. Can you please initial, um, next to the A, please?

[] Baez: Um, I have a quick question.

[Swisher]: Um hum.

[] Baez: Like, why am I being read **_Miranda_** rights though?

[Swisher]: Because you can't, you, you're currently in jail, so I need to, it's just part of the procedure that we do. Because you can't get up and walk away. Does that make sense? Because you can't just get up and leave, you have to summons [sic] people, things like that.

[] Baez: Ok.

[Swisher]: It's normal protocol and procedure that was you are being made. [sic]

[] Baez: Ok. So these are for this case that I'm here now …

[Swisher]: Uh hum.

[] Baez: And is there a reason like why I'm getting them so late?

[Swisher]: This is are, these are a fact. I don't, the police and myself do different things. I am here because of concerns of possible child abuse. I am not here because of the police charges. The police and I work together but we do completely different things.

[] Baez: Ok.

[Swisher]: So this is, this is my, this is my paper for what I do specifically.

[] Baez: Ok.

[Swisher]:  This is not for the police. You are only getting it now because I am only seeing you now.

[] Baez: Ok.

[Swisher]: Ok?

[] Baez:     Yep.

[Swisher]:   Ok. Um, so like I said, if you are ok with the constitutional right, if you can just initial there at the A. The next question is if you not, if you do talk to me, anything you might say will be used in court against you, do you understand that?

[] Baez:     Yes.

[Swisher]:   Ok.

[] Baez:     Do you just want me to initial ….

[Swisher]:   Yep.

[] Baez:     … or do you want me to put YES and initial?

[Swisher]:   Um, just, a YES and initial is fine. Thank you so much. Ok. The next one is if you want a lawyer to [sic] present now or at any time during this questioning, you have the right to do, you have the right to have one. Do you understand that?

[] Baez:     Yes.

[Swisher]:   If you can put YES and just initial for me.

[] Baez:     Ok.

[Swisher]:   Ok. The next question if you can't afford to pay a lawyer, the court will appoint one for you. And I will no longer be able to talk to you until you have had time to meet or consult with him or her, the lawyer that would be assigned to you. Do you understand that?

[] Baez:     Yep.

[Swisher]:   Ok. And are you sure you understand all the rights above that we just spoke about?

[] Baez:     Yes.

[Swisher]:   Ok. And the last one is knowing these rights, do you wish to talk to me and answer my questions?

[] Baez:     Yes I guess.

*Id*., at 1-3 (unpaginated; bold and italics added).

Swisher clearly made representations that she did not work for the police simply to define her role as a CYS investigator and explain that she had no control over the fact that Baez had not previously been given his *Miranda* rights. While Swisher did not specifically explain her duty to turn any findings over to the police, she ensured Baez understood that she worked with the police and that anything he said in the interview could be used in court against him. As such, we agree with the trial court that these statements are not misrepresentations.

Without misrepresentations, Baez's claim of an involuntary *Miranda* waiver fails. Baez was informed—both orally and in writing—that he had a right to remain silent, a right to an attorney, and warned that any statement made could be used against him in court. Baez assured Swisher he understood these rights, and waived them—both orally and in writing. As the facts and circumstances support the suppression court's findings, we find no error in the court's refusal to suppress the statements Baez made to Swisher during their interview.

Finally, Baez seeks a new trial based on alleged prosecutorial misconduct during closing argument. Baez claims the prosecutor improperly implied D.R. was a voluntary witness, when, in fact, her appearance at trial

was compelled by a bench warrant.[5] Conversely, the Commonwealth and trial court assert Baez has waived this challenge by failing to raise a contemporaneous objection during closing arguments.

> A party may (and should) wait to the end of … [a] closing argument to object to statements or arguments made therein as long as there is no factual dispute regarding the content of the statement or argument and the objection is made immediately after the … closing argument with sufficient specificity to permit the trial court to give a limiting or curative instruction.

***Commonwealth v. Hutchison***, 164 A.3d 494, 500 n.7 (Pa. Super. 2017) (citation omitted).

Here, Baez objected to the Commonwealth's implication that D.R.'s testimony was voluntary following[6] the Commonwealth's closing argument. There was no factual dispute regarding the content of the Commonwealth's closing argument and the objection was made with sufficient specificity for the trial court to give a limiting or curative instruction if it desired. As such, we do

---

[5] Baez also claims the prosecutor mischaracterized the evidence during her closing argument by telling the jury that Baez "told multiple individuals that his stepdaughter raped him." Appellant's Brief, at 31-32; N.T., Jury Trial - Closings and Charge, 6/8/16, at 40. However, Baez did not object to this statement at any point during trial or even raise it in his post-sentence motion. Therefore, it is not preserved for our review. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

[6] The Commonwealth and trial court rely heavily on the fact that Baez's objection was not "immediate," as it was not made until after the trial court returned from a short recess. However, from our review of the record, it appears that Baez did not have an opportunity to object immediately following the Commonwealth's closing. As Baez objected immediately upon return from the recess, we do not find this delay mandates waiver of his objection.

not find Baez waived his challenge by objecting as soon as practicable following the Commonwealth's closing argument.

However, even though we find Baez preserved this challenge, it does not warrant relief.

> [A]ny challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial.

**Commonwealth v. Jaynes**, 135 A.3d 606, 615 (Pa. Super. 2016) (internal citations and quotation marks omitted).

Baez claims the Commonwealth violated its duty of candor towards the jury by implying D.R. voluntarily testified through the following statement: "And did [D.R.] appear to be having fun yesterday? I mean when you look at her on the stand did she want to be here? Did she want to discuss the things that we're talking about?" N.T., Jury Trial - Closings and Charge, 6/8/16, at 23. When placed into the context of the Commonwealth closing argument, however, it is obvious that this statement was not speaking to the *voluntariness* of D.R.'s court appearance but rather to her *demeanor*. **See id**., at 22 ("Additionally, [D.R.'s] demeanor. If you recall, one of the things that I

talked to you about in opening was your judgment of witness credibility. One of the ways you do that is you judge their demeanor.") Because we do not find this statement improper, we cannot find that it had the unavoidable effect of prejudicing the jury. Thus, Baez's final issue on appeal merits no relief.

However, while we do not find any of the issues raised by Baez merit relief, we are cognizant that recent case law brings the validity of Baez's SVP status into question. **See generally Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) *allowance of appeal granted*, _____ A.3d _____ (Pa. July 31, 2018). As such, we *sua sponte* review the legality of Baez's sentence. **See id**., at 1214 (addressing the legality of appellant's SVP statue *sua sponte*).

In **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), our Supreme Court's held that the registration requirements under the Sexual Offender Registration and Notification Act ("SORNA") constitute criminal punishment. Then, in **Butler**, a panel of this Court concluded that, in light of **Muniz** classifying registration requirements as punitive, "section 9799.24(e) of SORNA [relating to SVP designation] violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." 173 A.3d at 1218. Because the statute outlining SVP designation, 42 Pa.C.S.A. § 9799.24(e)(3), identifies the trial court as the sole fact-finder for SVP designations, the **Butler** court found this section

unconstitutional. ***See id***. So, the ***Butler*** panel vacated the appellant's SVP status and remanded to the trial court to issue appropriate notice under 42 Pa.C.S.A. § 9799.23, as to appellant's registration obligation. ***See id***.

Here, the trial court found Baez an SVP pursuant to SORNA's SVP designation section, § 9799.24(e)(3), on November 30, 2016. Pursuant to ***Butler***, Baez's court-determined SVP designation constitutes an illegal sentence. Thus, we vacate his SVP designation order and remand the case to the trial court. We direct the trial court to issue a revised notice to Baez pursuant to ***Butler*** and § 9799.23.

Order vacated. Judgment of sentence affirmed in all other respects. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/2/2018